Nos. 23-1595, 23-1599, 23-1600, 23-1603, 23-1606, 23-1609, 23-1610, 23-1612, 23-1613, 23-1614, 23-1615, 23-1616, 23-1617, 23-1618

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

TOMMY WHITE, et. al,

*Plaintiffs - Appellees,*

v.

TITLEMAX OF VIRGINIA, INC., TITLEMAX OF SOUTH CAROLINA, INC.,

*Defendants - Appellants.*

On Appeal From the United States District Court for the Middle District of North Carolina
No. 1:19-cv-00489, Hon. Ho. Loretta Biggs

## APPELLEE'S BRIEF

Andrew H. Brown (N.C. State Bar No. 28450)
James R. Faucher (N.C. State Bar No. 31514)
Brown, Faucher, Peraldo & Benson, PLLC
822 North Elm Street, Suite 200
Greensboro, NC 27401
Telephone:336-478-6000
Facsimile: 336-273-5597
drew@greensborolawcenter.com
james@greensborolawcenter.com

*Attorneys for Plaintiffs - Appellees*

## Corporate Disclosure Statement

Pursuant to Federal Rules Appellate Procedure 26.1, **Plaintiff - Appellee, TOMMY WHITE &, Plaintiffs, DAWN HOUSETON, FRANCES GADDY, JARRAD COXE, KATRINA CAMPBELL, MARGIE WEAVIL, LORRAINE SLIGH, MELISSA HOLDER, MICHELLE KEELING, PAULETTE SHANNON, PHILLIP BROWN, RODNEY HICKMAN, STEPHANIE JONES, TARI HARRIS, WILLIE BRADFIELD** is an individual and there are no interests to report.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT .......................................................i

TABLE OF CONTENTS ..................................................................................... ii

TABLE OF AUTHORITIES ............................................................................... iii

APPELLEE'S BRIEF ............................................................................................ 1

    STATEMENT OF ISSUES PRESENTED ......................................................... 1

    STATEMENT OF THE CASE ........................................................................... 1

    SUMMARY OF THE ARGUMENT ................................................................. 3

    ARGUMENT ..................................................................................................... 5

      I. Federal Jurisdiction Over this Matter Exists Based on Diversity; Not the Federal Arbitration Act. ................................................................. 5

      II. Supplemental Jurisdiction Exists Anyway Over Any Plaintiffs Claims that were under $75,000 in dispute. ............................................. 10

    CONCLUSION ............................................................................................... 12

CERTIFICATE OF COMPLIANCE ................................................................... 13

CERTIFICATE OF SERVICE ............................................................................ 14

# TABLE OF AUTHORITIES

Page

**Cases:**

*ANR Coal co. v. Cogentrix of N.C., Inc.*
   173 F.3d 493 (4th Cir. 1999) .................................................................... 9, 10

*Badgerow v. Walters*
   142 S. Ct. 1310 (2022) ............................................................................... 3, 4

*Cannon v. AutoMoney*
   19CV877 (M.D.N.C. May 12, 2020) .......................................................... 6, 7

*Dart Cherokee Basin Operating Co., LLC v. Owens*
   574 U.S. 81 (2014) ......................................................................................... 7

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*
   545 U.S. 546 (2005) ............................................................................ 5, 10, 11

*Hursh v. DST Sys., Inc.*
   54 F.4th 561 (8th Cir. 2022) ........................................................................... 8

*Kirby v. Am. Soda Fountain Co.*
   194 U.S. 141 (1904) ....................................................................................... 7

*Mitchell v. Frattini*
   22-cv-2352 (JGK)
   2022 WL 17157027 (S.D.N.Y. Nov 22, 2022) .............................................. 8

*Saint Paul Mercury Indem. Co. v. Red Cab Co.*
   303 U.S. 283 (1938) ....................................................................................... 7

*Vaden v. Discover Bank*
   556 U.S. 49 (2009) ....................................................................................... 11

**Statutes:**

28 U.S.C. § 1332 ................................................................................ 1, 4, 6, 7, 9
28 U.S.C. § 1367 ........................................................................................... 10
28 U.S.C. § 1446 ............................................................................................. 6

## Appellee's Brief

### STATEMENT OF ISSUES PRESENTED

Whether the District court had subject matter jurisdiction over this matter based on diversity, 28 U.S.C. § 1332(a).

### STATEMENT OF THE CASE

Defendant-Appellants, collectively referred to as "TitleMax", are predatory car title loan lenders from South Carolina and Virginia who make loans in excess of 100% APR. Plaintiff-Appellees are citizens and residents of North Carolina.[1]

Over the last two decades, rather than remaining in states where predatory lending was legal, TitleMax systematically entered into North Carolina and violated North Carolina's Consumer Finance Act which caps interest rates at 30% APR. JA222–231, JA1032–1037, JA2214. It purposely availed itself of the North Carolina legal system to enforce its predatory loans by recording its liens with the North Carolina Department of Motor Vehicles, hiring agents to enter North Carolina and take vehicles, and through other contractual activities such as solicitation, discussion, negotiation, and receipt of payments from North Carolina.

---

[1] TitleMax needlessly expanded the Joint Appendix by insisting that they were challenging the merits of the ruling. TitleMax has now withdrawn the challenge to the Court's ruling on the merits and, despite using diversity jurisdiction to remove the case to federal court.

1

JA362–507, JA1032–1037. Much of the activity, even before the signing of the documents, occurred in part in North Carolina followed by the recording of the liens in Raleigh, North Carolina. *Id.*

Appellees filed statutory tort (not contract) claims pursuant to North Carolina's Consumer Finance Act and North Carolina Unfair & Deceptive Trade Practice for recovery of sums paid pursuant to Appellant's unlawful loans. JA222–231. The North Carolina Consumer Finance Act applies on its terms to "Loans Made Elsewhere" if TitleMax enters North Carolina, even in part, to conduct any single contractual activity. N.C.G.S. 53–190. With these matters pending since 2019, TitleMax attempted to assert a defense based on the Dormant Commerce Clause but lost that defense because the tortious activities did not occur <u>entirely</u> outside the state. *TitleMax of Delaware v. Weissmann*, No. 21–1020 (3rd Cir., January 24, 2022), *cert. denied* (*TitleMax of Delaware*, 597 US __, June 27, 2022). Further, the car title loan industry's efforts to avoid these claims based on choice of law provisions were likewise rejected since those provisions are unenforceable in North Carolina as they are against public policy. *Wall, et.al. v. AutoMoney, Inc.* (22-NCCOA-498, July 19, 2022); *Troublefield v. AutoMoney, Inc.* (22-NCCOA-497, July 19, 2022). TitleMax raises neither of those issues with this Court.

The instant matters are fifteen of hundreds of over 200 Plaintiffs in this *Goines* matter. TitleMax removed the case to the Middle District of North Carolina under diversity jurisdiction as there is complete diversity and because the matters as plead were in excess of $75,000. JA215–219. The matters were ordered to

2

arbitration over TitleMax's objection. JA262–277. Because the North Carolina Courts have now largely resolved any doubt that TitleMax is liable, arbitrators began entering dozens of awards against TitleMax, some for greater than $75,000 and some for less. The District Court has entered multiple Judgments (all here still within this same *Goines* case) from the arbitrations it had ordered in this matter over TitleMax's opposition.

   Faced with the reality of mass Judgments now and in the future, TitleMax, rather than resolving the matter, now moves now to set aside the very federal jurisdiction that it invoked in removing the matters. While subject matter jurisdiction can be raised at any time, TitleMax was correct in its removal filing that the Middle District of North Carolina has independent jurisdiction based on complete diversity and an amount in controversy at the time of the removal in excess of $75,000.

## SUMMARY OF THE ARGUMENT

   TitleMax entire position is based on *Badgerow v. Walters*, 596 U.S. ___, 142 S. Ct. 1310 (2022), a civil matter filed not at the outset of the dispute but after an arbitration award where the only purported jurisdictional basis for federal jurisdiction was the Federal Arbitration Act. There was no "independent federal jurisdiction" because the parties in *Badgerow* were not diverse; they were from the same state:

> The issue here is about where a federal court should look to determine whether an action brought under Section 9 or 10 has an independent

3

> jurisdictional basis. An obvious place is the face of the application itself. If it shows that the contending parties are citizens of different States (with over $75,000 in dispute), then §1332(a) gives the court diversity jurisdiction. Or if it alleges that federal law (beyond Section 9 or 10 itself) entitles the applicant to relief, then §1331 gives the court federal-question jurisdiction. But those possibilities do Walters no good. He and Badgerow are from the same State.

*Id.* at *6

In this case, federal jurisdiction of the entire matter was long since determined at the outset based on an "independent jurisdictional basis" - namely complete diversity and at least one matter in controversy greater than $75,000. This case was not one initiated solely to confirm these arbitration awards. It was a state court Complaint alleging independent state court causes of actions that TitleMax removed to federal court based on diversity jurisdiction. Now that it has lost, TitleMax challenges the jurisdiction it invoked in an effort to avoid responsibility for its tortious conduct.

TitleMax points to not a single matter where a diversity action was properly pending in federal court and, after the award, the Court - where the matter was already pending - was found to lack Jurisdiction to enter Judgment enforcing the Award from the arbitration that it had ordered. To the contrary all of the case, including *Badgerow*, say that in this context there is federal court jurisdiction because there is an "independent jurisdictional basis" under 28 U.S.C. § 1332(a).

The "amount in controversy" is determined in a matter at the outset – not after a jury verdict for less than $75,000. TitleMax's position would mean that a federal court sitting in diversity jurisdiction could have an entire dispute tried to verdict

4

and, if the jury disagrees with the Plaintiff as to the damages but still awards $50,000, the Court could not enter Judgment on the verdict. The defendant would not win in such a case—the Court is still able to enter Judgment for the amount awarded—even if less than $75,000. Federal court jurisdiction caselaw, of course, has long held the opposite: the amount in controversy is determined at the time of the Removal not based on the eventual amount awarded.

Finally, even if some of the Plaintiffs had less than $75,000 in dispute at the time of filing, which they did not, the Court would still have supplemental jurisdiction over those claims if at least one Plaintiff had more than $75,000 in dispute at the time of the filing of the state court Complaint. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005).

## ARGUMENT

### I. Federal Jurisdiction Over this Matter Exists Based on Diversity; Not the Federal Arbitration Act.

This matter was filed in North Carolina state court (Guilford County) by 264 North Carolina residents against TitleMax of Virginia, LLC and TitleMax of South Carolina, LLC (both nonresidents) asserting state statutory tort claims and asking that the matter be ordered to arbitration pursuant to the parties' agreement. TitleMax opposed arbitration making the civil action necessary. Each Plaintiff sought compensatory, treble, punitive damages, and attorneys' fees individually in excess of $75,000.

5

TitleMax chose to remove the case to federal court asserting diversity jurisdiction.[2] In its Notice of Removal (JA 215–219), TitleMax, the same party now challenging the amount in controversy, writes extensively for pages about how the matter in dispute is in excess of $75,000:

> The Court has jurisdiction over this action under 28 U.S.C. §1332(a). Complete diversity exists between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000. The amount in controversy is established in three independently sufficient ways: (1) Plaintiffs' demands for relief, particularly when considering their requests for punitive damages and attorneys' fees; (2) Plaintiffs' demands for relief combined with Defendants' compulsory counterclaims; and (3) Plaintiffs' claims combined with the underlying transaction history of many Plaintiffs.

JA216

TitleMax was correct, of course, the matters did have more than $75,000 in dispute and Plaintiffs had no basis to move to remand the action. As it turned out, some of the eventual Awards were in excess of $75,000. See, e.g., JA1032–1038.

Nonetheless, the amount in controversy for diversity jurisdiction is determined at the outset of the matter, not after the Award. "The Court begins with the general proposition that the amount in controversy is the 'sum demanded in good faith in the initial pleading.'" *Cannon v. AutoMoney*, 19CV877 (M.D.N.C. May 12, 2020), citing 28 U.S.C. § 1446(c)(2). "If the amount in controversy is unclear on the face

---

[2] TitleMax also specifically removed based 28 U.S.C. § 1332(d) because "there are more than 100 plaintiffs, the parties are at least minimally diverse, and the total amount in controversy exceeds $5 million." JA218 TitleMax was correct. This is an entirely separate basis of subject matter jurisdiction here that TitleMax failed entirely to raise before this Court.

6

of the complaint…the defendant may assert the amount in controversy in the Notice of Removal. That amount 'should be accepted when not contested by the plaintiff'." *Id.*, citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014). No such challenge was made since the claims were in fact in excess of $75,000 and jurisdiction was established. Any "events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached." *Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938), citing *Kirby v. Am. Soda Fountain Co.*, 194 U.S. 141, 146 (1904)

As such, contrary to Appellant TitleMax's polar opposite position here before this panel, the basis for federal jurisdiction in this matter has never been Section 9 of the Federal Arbitration Act. It has always had an "independent jurisdictional basis" under diversity jurisdiction, 28 U.S.C. § 1332(a). TitleMax couches the Complaint as if it was filed post arbitration award as "fifteen applications" which ask "the court below to confirm their arbitration awards pursuant to Section 9." (Applnt Brief at 5). Such was the procedural posture of *Badgerow*, a new lawsuit between nondiverse parties, only seeking relief under the FAA. The exact opposite is true here. This is a wholesale dispute filed at the outset between completely diverse parties, each asserting claims against each other under state law, well in excess of $75,000. Some of the claims were sent, over TitleMax's objection, to arbitration and now the Court is simply enforcing those awards within the confines of the existing case for which it already has jurisdiction.

7

Appellants' brief relies on two other cases to attempt to characterize the amount of the eventual award as the determining whether there was jurisdiction from the beginning. TitleMax cites at page 10 to *Mitchell v. Frattini*, 22-cv-2352 (JGK) 2022 WL 17157027, at *3 (S.D.N.Y. Nov 22, 2022) and represents the holding was "finding no jurisdiction where award totaled $25,450." In reality, *Mitchell* was the only Plaintiff in the civil case which was filed after the arbitration award. Therefore, at the time Mitchell initiated his case in federal court, there was no diversity jurisdiction because no Plaintiff at the time of filing had a controversy greater than $75,000 – a situation very different than the one before the Court.

Appellant also relies on *Hursh v. DST Sys., Inc.*, 54 F.4th 561, 565 (8th Cir. 2022) and represents that the holding was "finding district court lacked subject-matter jurisdiction under the FAA where Section 9 application failed to plead facts establishing amount in controversy." In reality, in *Hursh* there is no real discussion at all about the "amount in controversy" because the Court found that Plaintiffs did not plead diversity – nor could they as 53 of the 177 Plaintiffs resided in Missouri – the same state where the corporate Defendant resided. Further, the Eighth Circuit remanded all of the "consolidated" appeals as they were actually each a separate lawsuit and, therefore, there may well have been diversity jurisdiction in some of the individual Plaintiff cases. Here, this is just a single case – and there is complete diversity. It is the complete diversity and the amount in controversy at the time this *Goines* case was filed which is the "independent federal jurisdiction."

TitleMax's position that the amount in controversy is determined after the Award, taken literally, would mean that even though a federal court already has

8

jurisdiction over a matter, it cannot hear individual aspects of a particular claim if that claim ends up being less than $75,000. This would flip efficient federal court jurisdiction on its head creating duplicative state and federal court cases between the same parties and not allowing a federal court to enter judgment on a jury's verdict for less than $75,000. 28 U.S.C. § 1332 instead makes a cost allocation difference in such cases where Plaintiff initiated the matter in Federal Court:

> Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $75,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

28 U.S.C. § 1332(b). Under TitleMax's theory, the federal court should instead then dismiss this case for lack of jurisdiction – a remedy clearly not contemplated by Congress which instead crafted (b).

TitleMax spends Section C(1) of its brief debating whether this case was brought under Section 4 or Section 9 of the FAA. Again, it was brought under neither – it was filed in state court and TitleMax removed the matter, properly, under Diversity Jurisdction – not the FAA. TitleMax's notice of removal cites just diversity – not either Section 4 or Section 9 of the FAA since the case was not brought under either Section or the FAA at all. JA215–219. TitleMax cites on this point to *ANR Coal co. v. Cogentrix of N.C., Inc.*, 173 F.3d 493, 496 n.1 (4th Cir. 1999), a civil action again filed <u>after</u> an arbitration Award had already been

9

entered. In *ANR Coal* the 4th Circuit did not even discuss subject matter jurisdiction since that was not even an issue raised before the Court. Instead this was a new action and the footnote 1 cited talks about the difference between labeling this <u>post</u> arbitration Award civil lawsuit as a Complaint or Motion and the Court ultimately concluded the "labeling" does not matter and there is jursidiction anyway. *Id.* Here in *Goines*, again, TitleMax removed and asserted federal diversity jurisdiction anyway—not Section 4, 6, or 9 of the FAA which is what even resulted in that discussion in *ANR Coal*. Further, Appellees here did file a <u>motion</u> to confirm the awards within the already existing diversity action—rather than file a new Complaint.

## II. Supplemental Jurisdiction Exists Anyway Over Any Plaintiffs Claims that were under $75,000 in dispute.

Even if some Plaintiffs, at the outset, had claims with less than $75,000 in dispute, which they did not, the Court would still have supplemental jurisdiction over those Plaintiffs' claims. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546. *Exxon* was decided following Congress clarifying such supplemental jurisdiction exists with the passage of 28 U.S.C. § 1367 in 1990 which provides "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the Unites States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." § 1367(a).

10

The *Exxon* court went on to clarify that this makes jurisdiction applicable to the particular facts present here:

> If §1367(a) were the sum total of the relevant statutory language, our holding would rest on that language alone. The statute, of course, instructs us to examine §1367(b) to determine if any of its exceptions apply, so we proceed to that section. While §1367(b) qualifies the broad rule of §1367(a), it does not withdraw supplemental jurisdiction over the claims of the additional parties at issue here. The specific exceptions to §1367(a) contained in §1367(b), moreover, provide additional support for our conclusion that §1367(a) confers supplemental jurisdiction over these claims. Section 1367(b), which applies only to diversity cases, withholds supplemental jurisdiction over the claims of plaintiffs proposed to be joined as indispensable parties under Federal Rule of Civil Procedure 19, or who seek to intervene pursuant to Rule 24. Nothing in the text of §1367(b), however, withholds supplemental jurisdiction over the claims of plaintiffs permissively joined under Rule 20 (like the additional plaintiffs in No. 04–79) or certified as class-action members pursuant to Rule 23 (like the additional plaintiffs in No. 04–70). The natural, indeed the necessary, inference is that §1367 confers supplemental jurisdiction over claims by Rule 20 and Rule 23 plaintiffs. This inference, at least with respect to Rule 20 plaintiffs, is strengthened by the fact that §1367(b) explicitly excludes supplemental jurisdiction over claims against defendants joined under Rule 20.

*Id.*

As such, for additional Plaintiffs, joined under Rule 20, rather than for additional defendants, supplemental jurisdiction existed here, even if some of the claims were less than $75,000.

TitleMax now argues there would be no supplemental jurisdiction because the FAA somehow trumps the already existing diversity jurisdiction based on *Vaden v. Discover Bank*, 556 U.S. 49, 129 S.Ct. 1262 (2009). In reality, *Vaden* was not even

11

a diversity case at all. The action was only filed claiming jurisdiction under Section 4 of the FAA. TitleMax cites to no case in which there was already proper diversity jurisdiction, and the federal court was without jurisdiction to confirm an arbitration award and enter Judgment between the parties in the matter– because no Court has ever found such.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully moves the Court to enter its Order affirming the District Court's Judgments.

Respectfully submitted,

Dated: September 21, 2023     By: /s/ Andrew H. Brown

Andrew H. Brown
N.C. State Bar No. 28450

/s/ James R. Faucher
N.C. State Bar No. 31514

/s/ Jeffrey K. Peraldo
N.C. State Bar No. 17556
Brown Faucher Peraldo & Benson PLLC
822 North Elm Street, Suite 200
Greensboro, NC 27401
Telephone: 336-478-6000
Facsimile: 336-273-5597
drew@greensborolawcenter.com
james@greensborolawcenter.com
*Attorneys for Plaintiffs-Appellees*

12

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **3,053 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Times New Roman**, using TypeLaw.com's legal text editor.


Dated: September 21, 2023             By:  /s/ Andrew H. Brown

## Certificate of Service

I hereby certify that on September 21, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the CM/ECF system. All participants are registered CM/ECF users, and will be served by the appellate CM/ECF system.

Dated: September 21, 2023                    By: /s/ Andrew H. Brown