NOS. 23-1595(L); 23-1599; 23-1600; 23-1601; 23-1603; 23-1606; 23-1609; 23-1610; 23-1612; 23-1613; 23-1614; 23-1615; 23-1616; 23-1617; 23-1618

In The
# United States Court Of Appeals
# For The Fourth Circuit

**TOMMY WHITE,**

*Plaintiff – Appellee,*

v.

**TITLEMAX OF VIRGINIA, INC.;**
**TITLEMAX OF SOUTH CAROLINA, INC.,**

*Defendants – Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
AT GREENSBORO

_____

**REPLY BRIEF OF APPELLANTS**

_____

**Anthony J. Durone**
**Lauren Tallent**
**BERKOWITZ OLIVER LLP**
**2600 Grand Boulevard**
**Suite 1200**
**Kansas City, MO 64108**
**(816) 561-7007**

*Counsel for Appellants*

# TABLE OF CONTENTS

Page:

TABLE OF AUTHORITIES ................................................................................... ii

SUMMARY OF ARGUMENT ...............................................................................1

ARGUMENT .............................................................................................................2

  A. Diversity jurisdiction was not established "at the outset" because Borrowers' Section 4 petition to compel arbitration does not supply subject-matter jurisdiction for purposes of Section 9 ................................................................................................2

  B. *Badgerow* applies notwithstanding its procedural posture ....................7

  C. The anomalous structure of the FAA does not contravene the normal rules of subject-matter jurisdiction ...........................................8

  D. Applying supplemental jurisdiction to Borrowers' Section 9 applications would be inconsistent with *Badgerow* ..............................9

CONCLUSION ........................................................................................................11

CERTIFICATE OF COMPLIANCE ......................................................................12

i

# **TABLE OF AUTHORITIES**

Page(s):

**Cases:**

*ANR Coal Co. v. Cogentrix of N.C., Inc.*,
    173 F.3d 493 (4th Cir. 1999)..................................................................................3

*Badgerow v. Walters*,
    596 U.S. ___, 142 S. Ct. 1310 (2022) .....................................................*passim*

*Delta Fin. Corp. v. Paul D. Comanduras & Assocs.*,
    973 F.2d 301 (4th Cir. 1992)...................................................................................3

*Discover Bank v. Vaden*,
    396 F.3d 366 (4th Cir. 2005)...................................................................................5

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
    545 U.S. 546 (2005)................................................................................................9

*Henry ex rel. BSC Ventures Holdings, Inc. Emp.*
*Stock Ownership Plan v. Wilmington Trust NA*,
    72 F.4th 499 (3d Cir. 2023)....................................................................................3

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983).................................................................................................4, 8

*Vaden v. Discover Bank*,
    556 U.S. 49 (2009).....................................................................................1, 4, 5, 8

*Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*,
    666 F.3d 932 (5th Cir. 2012)...................................................................................3

**Statutes:**

9 U.S.C. § 4 .............................................................................................*passim*

9 U.S.C. § 6 .............................................................................................................7

9 U.S.C. § 9 .............................................................................................*passim*

9 U.S.C. § 10 ................................................................................................... 6, 10

28 U.S.C. § 1332(a) ............................................................................................... 6

28 U.S.C. § 1367 .................................................................................................. 10

iii

## SUMMARY OF ARGUMENT

Borrowers argue that the Federal Arbitration Act is irrelevant because, to them, this is simply a run-of-the-mill diversity case. They characterize the jurisdictional issue as "long since determined at the outset." Appellees' Br. at 3. This characterization is wrong. The Supreme Court has made clear that different sections of the FAA require different jurisdictional analysis. Even after Borrowers initiated this action to compel TitleMax to arbitration as governed by Section 4 of the FAA, and even after they explicitly invoked the FAA's provisions to confirm their arbitration awards, Borrowers would now have this Court ignore the FAA altogether.

This Court may not do so. Under Section 4 of the FAA, the court below had "look-through" jurisdiction to grant Borrowers' petition to compel arbitration. *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009). But when Borrowers later sought to confirm their arbitration awards under a different section of the FAA, Section 9, the court below could not "look through" those applications. *Badgerow v. Walters*, 596 U.S. \_\_\_, 142 S. Ct. 1310, 1318 (2022). Instead, the court was required to answer a different jurisdictional question: whether Borrowers' Section 9 applications supplied an "independent jurisdictional basis" for the court to grant the requested relief. No Borrower's application supplied the requisite independent jurisdictional basis, so the court below lacked subject-matter jurisdiction to confirm Borrowers' arbitration awards.

# ARGUMENT

Borrowers offer four arguments in favor of the district court's jurisdiction to confirm their arbitration awards. First, Borrowers argue that diversity jurisdiction was established at the outset of the case, so no jurisdictional analysis under the FAA is necessary. Appellee's Br. at 5. Second, they argue that *Badgerow* does not apply because it arose from a distinct procedural posture. *Id.* at 7. Third, they argue that a finding that the court below lacked jurisdiction to confirm their arbitration awards would be contrary to general principles of diversity jurisdiction. *Id.* at 8. And fourth, they argue that the court below had supplemental jurisdiction to confirm their awards. *Id.* at 10. Each of Borrowers' arguments is without merit.

**A.  Diversity jurisdiction was not established "at the outset" because Borrowers' Section 4 petition to compel arbitration does not supply subject-matter jurisdiction for purposes of Section 9.**

This case began when Borrowers filed a petition to compel arbitration. Although Borrowers styled their pleading a "Complaint," they included a "Motion to Compel Arbitration" as their ultimate claim for relief. JA231. There is no dispute that Borrowers initiated this action to ask the court to compel each of their claims to individual arbitration. Appellees' Br. at 5; JA262. The district court even explained: "it is clear to this Court that arbitration is, and always has been, Plaintiffs' preferred forum." JA263. Thus, consistent with this Court's precedent, Borrowers' initial filing was properly analyzed based on its substance as a Section 4 petition to compel

2

arbitration, not based on its caption as a "Complaint." *ANR Coal Co. v. Cogentrix of N.C., Inc.*, 173 F.3d 493, 496 n.1 (4th Cir. 1999); *Delta Fin. Corp. v. Paul D. Comanduras & Assocs.*, 973 F.2d 301, 303 (4th Cir. 1992) (analyzing "complaint, which . . . asked for an order compelling [defendant] to engage in arbitration" and noting "the question of jurisdictional amount may be determined by reference to the possible award resulting from the requested arbitration").[1]

Indeed, Section 4 explicitly governs where, as here, a party to an arbitration agreement requests an order from a court compelling arbitration. Borrowers were "aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration" and therefore petitioned the court below "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In other words, Borrowers "ask[ed] a . . . court to compel arbitration without first taking the formal step of initiating or removing a [diversity] suit—that is, without seeking federal adjudication of the very questions [they] want[] to arbitrate rather

---

[1] Other federal circuit courts similarly evaluate the substance, rather than the form, of applications under the FAA. *See Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 666 F.3d 932, 934 (5th Cir. 2012) (analyzing "complaint . . . seeking an order compelling binding arbitration" as a "petition to compel arbitration . . . based on § 4 of the Federal Arbitration Act"); *cf. Henry ex rel. BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Trust NA*, 72 F.4th 499, 505 (3d Cir. 2023) ("To determine whether an order is one that, in substance, declines to compel arbitration, we examine the label and the operative terms of the district court's order, as well as the caption and relief requested in the underlying motion.") (internal quotations omitted).

3

than litigate." *Vaden v. Discover Bank*, 556 U.S. 49, 65 (2009). The court below further observed that Borrowers "have consistently insisted upon arbitrating, rather than litigating, their individual claims" and "filed this action not as an alternative to arbitration, but for the very purpose of facilitating it." JA273-274. Borrowers' request to compel arbitration, therefore, could not be anything other than a petition to compel arbitration governed by Section 4.

Thus, upon removal, the court merely had look-through jurisdiction to evaluate Borrowers' Section 4 petition. TitleMax timely filed a notice of removal asking the federal district court below, rather than a state court, to resolve Borrowers' motion to compel arbitration. JA219, ¶¶ 22-23. Because the FAA does not provide an independent basis for subject-matter jurisdiction, under *Vaden*, the court was required to evaluate its subject-matter jurisdiction over the Section 4 petition by "looking through" Borrowers' request to compel arbitration to the underlying substantive dispute.[2] More specifically, for petitions to compel arbitration under

---

[2] Borrowers' suggestion that TitleMax should have invoked Section 4 of the FAA in its removal papers is incorrect and reflects a fundamental misunderstanding of the FAA's jurisdictional structure. Appellees' Br. at 9, 10. The FAA does not itself provide any independent federal question basis for subject matter jurisdiction. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983). Thus, TitleMax could not have cited "either Section 4 or Section 9 of the FAA" in its removal papers, Appellees' Br. at 9, because neither would have supported jurisdiction. The only material jurisdictional question was whether, setting aside the arbitration agreement, the court "would have jurisdiction under title 28" over the underlying dispute. 9 U.S.C. § 4.

4

Section 4, *Vaden* directs that a district court must analyze whether subject-matter jurisdiction would exist "save for" the arbitration agreement. *Vaden*, 556 U.S. at 62 ("The phrase 'save for [the arbitration] agreement' indicates that the district court should assume the absence of the arbitration agreement and determine whether it 'would have jurisdiction under title 28' without it.") (quoting *Discover Bank v. Vaden*, 396 F.3d 366, 369, 372 (4th Cir. 2005)). Here, looking through Borrowers' petition to compel arbitration revealed a dispute between completely diverse parties involving more than $75,000. JA216-217, ¶¶ 9-12; Appellee's Br. at 4. The court below therefore had look-through jurisdiction to compel Borrowers' claims to arbitration.

However, Section 4's look-through rule does not apply to applications to confirm arbitration awards under Section 9. The Supreme Court held in *Badgerow* that the look-through rule is constrained to Section 4 petitions to compel arbitration. 142 S. Ct. at 1318. It does not apply to Section 9. *Id.* Thus, the limited look-through jurisdiction for purposes of compelling arbitration pursuant to a Section 4 petition does not—indeed, cannot—continue to provide jurisdiction for a later application to confirm an arbitration award under Section 9. *Badgerow*, 142 S. Ct. at 1318. Instead, *Badgerow* explains that an application to confirm an arbitration award under Section 9 must have an independent basis for jurisdiction that is clear from the face of the application. *Id.* at 1316.

5

But after having gotten exactly what they asked for in their Section 4 petition—an order compelling arbitration—Borrowers now attempt to run away from the provisions of the FAA that facilitated their requested relief. They assert that the court below did not need to look through their Section 4 petition, and therefore did not need an independent jurisdictional basis to grant their Section 9 application, because this case "has always had an 'independent jurisdictional basis' under diversity jurisdiction, 28 U.S.C. § 1332(a)." Appellee's Br. at 7. Borrowers thus contend that a court may always look for jurisdiction by disregarding an arbitration agreement, no matter what section of the FAA is at issue. But the Supreme Court has said definitively that courts may not do so: "Congress has not authorized a federal court to adjudicate a Section 9 or 10 application just because the contractual dispute it presents grew out of arbitrating different claims, turning on different law, that (save for the parties' agreement) could have been brought in federal court." *Badgerow*, 142 S. Ct. at 1318. Borrowers' position—which is founded on a flagrant disregard of applicable Supreme Court precedent—must therefore be rejected.

The fact remains that Borrowers initially requested relief pursuant to Section 4 and later requested relief pursuant to Section 9. Under the FAA, the court had look-through jurisdiction to grant Borrowers' Section 4 petition, but that same jurisdictional analysis did not apply to Borrowers' Section 9 applications.

6

### B. *Badgerow* applies notwithstanding its procedural posture.

Borrowers are correct that *Badgerow* involved a procedurally distinct context where a party initiated a new action to confirm an arbitration award, but the distinction makes no difference here for several reasons.

First, the Supreme Court did not limit *Badgerow*'s holding to cases where a party initiates a new action to confirm an arbitration award. Instead, it unequivocally articulated that "a court may look only to the [Section 9] application actually submitted to it in assessing its jurisdiction." *Badgerow*, 142 S. Ct. at 1314.

Second, the Court also made clear that the jurisdictional principle applicable to a Section 4 petition does not apply to a Section 9 application. *Id.* at 1317. So, even though *Badgerow* did not involve a case where a party first filed a petition to compel arbitration, *Badgerow* teaches that the jurisdictional analysis for such a petition is different from the jurisdictional analysis for a Section 9 application.

And third, Section 6 directs that an "application" under the FAA "shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. § 6. Thus, under the FAA, regardless of how a Section 9 application is filed and denominated— whether as a case-initiating complaint, a motion, a memorandum, a notice, and so on—it is to be treated as a motion. *Id.* Indeed, nothing required Borrowers to file their applications in the same case as their Section 4 petition. Borrowers could have

7

initiated new actions to confirm their arbitration awards in the court below or in any other federal court where venue would be proper. Under *Badgerow*, the result would be the same—the court would lack jurisdiction because the face of each application reveals no federal question and puts less than $75,000 in controversy.

C. **The anomalous structure of the FAA does not contravene the normal rules of subject-matter jurisdiction.**

Borrowers assert that proper application of the FAA here would "flip efficient federal court jurisdiction on its head." Appellees' Br. at 9. According to Borrowers, the rule articulated in *Badgerow* would mean that a federal court may not "enter judgment on a jury's verdict for less than $75,000." *Id.*

Borrowers' concern is unfounded and again ignores that this is a case initiated under the FAA. Cases initiated under the FAA implicate different jurisdictional rules than cases not involving arbitration. As the Supreme Court has repeatedly expressed, the FAA is "something of an anomaly in the field of federal-court jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983). This "anomaly" arises out of the FAA's "substantive supremacy" combined with its "nonjurisdictional cast." *Vaden*, 556 U.S. at 59. Compounding the FAA's idiosyncrasy is the "highly unusual" "look-through rule" which applies to Section 4 but not to Section 9. *Badgerow*, 142 S. Ct. at 1318.

The result is that, in a case brought pursuant to the FAA, jurisdictional questions depend on what a party asks a court to do. If the party asks the court to

8

compel arbitration, then Section 4 permits the court to look through the petition to the underlying controversy. "[C]areful analysis of Section 4's text showed that Congress wanted [the look-through rule] applied to petitions brought under that provision." *Id.* But if the party asks the court to confirm an arbitration award, Section 9 does not permit this same look-through approach. *Id.* Instead, the court must look at the face of the Section 9 application alone to assess its jurisdiction. *Id.* at 1317.

In cases where no arbitration agreement is at issue, the FAA and its jurisdictional rules do not apply. There would be no statutory basis on which to assess look-through jurisdiction at all, nor would there be any reason to identify a jurisdictional basis independent of an application to confirm an arbitration award. Instead, normal jurisdictional rules would apply. So where a party requests federal court adjudication of claims between diverse parties in excess of $75,000, the court would undoubtedly have jurisdiction regardless of whether the party ultimately recovers less than $75,000. Nothing about these appeals would change that result.

**D.    Applying supplemental jurisdiction to Borrowers' Section 9 applications would be inconsistent with *Badgerow*.**

Borrowers do not dispute that any exercise of supplemental jurisdiction would require the court to look beyond the face of their Section 9 applications. Borrowers instead assert in cursory fashion that supplemental jurisdiction applies under *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005). Borrowers' argument for supplemental jurisdiction is sound for purposes of Section 4, which specifically

9

directs the court to consider whether, "save for such agreement," it "would have jurisdiction under title 28." 9 U.S.C. § 4. But Borrowers fail to square their argument with *Badgerow*'s central holding as it relates to Section 9:

> The question presented here is whether that same "look-through" approach to jurisdiction applies to requests to confirm or vacate arbitral awards under the FAA's Sections 9 and 10. We hold it does not. Those sections lack Section 4's distinctive language directing a look-through, on which *Vaden* rested. Without that statutory instruction, a court may look only to the application actually submitted to it in assessing its jurisdiction.

*Badgerow*, 142 S. Ct. at 1314. Thus, while the court could consider whether supplemental jurisdiction would exist when evaluating Borrowers' petition to compel arbitration, it was bound to look solely to Borrowers' Section 9 applications to determine jurisdiction over those applications. *Id.*

Here, each Borrower individually arbitrated their claims, received an individual arbitration award, and filed an individual application to confirm that award. The face of each application did not support jurisdiction under 28 U.S.C. § 1367 or any other jurisdictional provision. The court below therefore lacked jurisdiction to grant each Borrower's Section 9 application.

10

## **CONCLUSION**

For the foregoing reasons, TitleMax respectfully requests that the Court vacate the judgments below for lack of subject-matter jurisdiction.

Dated: October 12, 2023    /s/ *Anthony J. Durone*
Anthony J. Durone
Lauren Tallent
BERKOWITZ OLIVER LLP
2600 Grand Blvd, Suite 1200
Kansas City, MO 64108
T: 816-561-7007
adurone@berkowitzoliver.com
ltallent@berkowitzoliver.com

*Counsel for Appellants*

## **CERTIFICATE OF COMPLIANCE**

1. This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments): this document contains 2,534 words.

2. This document complies with the typeface requirements because:

    This document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: October 12, 2023

/s/ *Anthony J. Durone*
Anthony J. Durone
Lauren Tallent
BERKOWITZ OLIVER LLP
2600 Grand Blvd, Suite 1200
Kansas City, MO 64108
T: 816-561-7007
adurone@berkowitzoliver.com
ltallent@berkowitzoliver.com

*Counsel for Appellants*